# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**ROBIN BUNLEY (#136907)**                          **CIVIL ACTION NO.**

**VERSUS**                                          **17-579-SDD-EWD**

**JAMES LeBLANC**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on May 1, 2020.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ROBIN BUNLEY (#136907)                    CIVIL ACTION NO.

VERSUS                                     17-579-SDD-EWD

JAMES LeBLANC

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is a Complaint, filed by Robin Bunley ("Bunley"). Based on the screening process under 28 U.S.C. §§ 1915(e) and 1915A, it is recommended that this case be dismissed for failure to state a claim.

**I.     Background**

Plaintiff, an inmate representing herself, who is currently confined at the Plaquemines Parish Detention Center ("PPDC")[1] in Davant, Louisiana, filed this proceeding pursuant to 42 U.S.C. § 1983 against James LeBlanc ("LeBlanc").[2] Plaintiff makes numerous complaints regarding the conditions at PPDC and her previous institution, the Louisiana Correctional Institute for Women ("LCIW"), and how these conditions negatively affect other inmates.[3] Plaintiff also complains of loss of personal property, change of job assignment, loss of trustee status, favoritism within the prison, and alleged misappropriation of funds. Plaintiff requests the following relief: (1) consolidation of this action with 17-cv-228;[4] (2) appointment of auditors to audit the finances of LCIW and "Snack Shack;" (3) appointment of inspectors to test for mold in LCIW; (4) federal

---

[1] Plaintiff was previously incarcerated at the Louisiana Correctional Institute for Women ("LCIW"). (R. Doc. 1).
[2] R. Doc. 1.
[3] R. Doc. 1.
[4] It has also been recommended that *Robin Bunley v. James LeBlanc*, Civil Action No. 17-cv-228-BAJ-EWD (M.D. La.) be dismissed for failure to state a claim. No. 17-cv-228 at R. Doc. 10.

oversight of LCIW "to bring compliance and conformity;" and (5) to designate this action as a class action.[5]

## II. Law and Analysis

### A. Applicable Legal Standards

Pursuant to 28 U.S.C. §§ 1915(e) and 1915A, this Court is authorized to dismiss an action against a governmental entity or an officer or employee of a governmental entity if satisfied that the action or claim is frivolous, malicious, or fails to state a claim upon which relief may be granted. The statutes impose similar standards for dismissal[6] and afford a court the ability to separate those claims that may have merit from those that lack a basis in law or in fact. A § 1915 dismissal may be made at any time, before or after service of process and before or after an answer is filed, if the court determines that the allegation of poverty is untrue; or the action is frivolous or malicious; seeks monetary relief against a defendant who is immune from such relief; or fails to state a claim on which relief may be granted.[7]

A claim is factually frivolous if the alleged facts are "clearly baseless, a category encompassing allegations that are 'fanciful,' 'fantastic,' and 'delusional.'"[8] A claim has no arguable basis in law if it is based upon an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist."[9] The law gives judges not only the authority to dismiss a claim that is based on an indisputably meritless legal

---

[5] R. Doc. 1, p. 11.
[6] § 1915(e) provides a procedural mechanism for dismissal of those lawsuits against a governmental entity or employee or officer of a governmental entity that are frivolous, malicious, or fail to state a claim in proceedings where the plaintiff was granted leave to proceed *in forma pauperis*; § 1915A provides a procedural mechanism for dismissal of lawsuits by prisoners that are frivolous, malicious, or fail to state a claim upon which relief may be granted regardless of the pauper status of the plaintiff. Plaintiff was granted permission to proceed *in forma pauperis* on November 7, 2019. (R. Doc. 4). The initial order granting Plaintiff permission to proceed *in forma pauperis* was later vacated to change the initial partial filing fee from $10.83 to $0.00, though Plaintiff retained her pauper status. (R. Doc. 8).
[7] *See Green v. McKaskle*, 788 F.2d 1116, 1119 (5th Cir. 1986).
[8] *Denton v. Hernandez*, 504 U.S. 25, 32-33.
[9] *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998).

theory, but also the unusual power to pierce the veil of the factual allegations.[10] Pleaded facts that are merely improbable or strange, however, are not frivolous for purposes of the § 1915 analysis.[11]

Courts apply the same standard used for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure to determine whether the complaint fails to state a claim under § 1915(e)(2)(B)(ii).[12] All well-pleaded facts are accepted as true and viewed in the light most favorable to plaintiff.[13] To survive the screening process, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[14] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[15]

Plaintiff's claims can be distilled to the following: (1) claims on behalf of other inmates, including, but not limited to, claims of health conditions related to mold exposure; (2) personal lost property as a result of evacuation during the flood of August 2016; (3) change in job assignment and loss of trustee status; (4) favoritism toward certain inmates; and (5) general complaints regarding the uncomfortable nature of prison.

### B. Supervisory Liability

As an initial matter, Plaintiff only names LeBlanc as a defendant and states that LeBlanc, the Secretary for the Louisiana Department of Public Safety and Corrections, is "vicariously involved and responsible through the actions of his named administrators, former Warden James Rogers and former Dep. Warden Connie Moore"[16] for, what Plaintiff argues, are the unsafe conditions at LCIW.

---

[10] *Denton*, 504 U.S. at 32.
[11] *Id.* at 33; *Ancar v. Sara Plasma, Inc.*, 964 F.2d 465, 468 (5th Cir. 1992).
[12] *Hart v. Harrison*, 343 F.3d 762, 763-64 (5th Cir. 2003).
[13] *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).
[14] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[15] *Id.*
[16] R. Doc. 1, p. 4.

Supervisory officials may be held liable under § 1983 only if they affirmatively participate in acts that cause constitutional deprivation or implement unconstitutional policies that causally result in plaintiff's injury.[17]  Allegations that a named defendant is responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* are insufficient to state a claim under § 1983.[18]  In the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must be able to show that a constitutional deprivation has occurred as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law.[19]  Liability can be found to exist, notwithstanding a lack of direct personal participation, if a supervisory official implements a policy so deficient that the policy may be considered the moving force behind the constitutional violation.[20]

Plaintiff does not allege the personal involvement of LeBlanc and does not allege that the conditions about which she complains were a result of any policy implemented by LeBlanc.  Thus, LeBlanc cannot be liable for Plaintiff's claims.  Even were Plaintiff to seek leave to amend her Complaint to add additional defendants, Plaintiff's claims are legally frivolous.

### C. Mold Claims/General Prison Conditions

Plaintiff first claims that mold at LCIW is "hazardous to inmates' health" and that inmates were instructed to paint over the mold to "mask" the condition.[21]  Plaintiff does not allege any health conditions *she* suffered as a result of the alleged mold problem at LCIW, and because

---

[17] *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992).
[18] *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009), *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978).  *See also Bell v. Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability").
[19] *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983).
[20] *Thompkins v. Belt*, 828 F.2d 298 (5th Cir. 1987).
[21] R. Doc. 1.

4

Plaintiff did not suffer any injury as a result of the alleged conditions of confinement, she cannot state a claim.[22] Because Plaintiff cannot state a claim on behalf of herself, she does not have standing to bring claims on behalf of other inmates for injuries they allegedly sustained due to mold exposure.[23]

To the extent Plaintiff's complaints regarding the generally uncomfortable conditions at PPDC can be interpreted as a personal claim, that claim is also subject to dismissal.[24] The Constitution does not mandate comfortable prisons. If prison conditions "are restrictive and even

---

[22] *Bernhart v. Gusman*, No. 15-1800, 2015 WL 9581319 at *3 & 11-12 (E.D. La. Nov. 17, 2015) (dismissing as frivolous a plaintiff's conditions of confinement claim where inmate had not suffered any injury other than minor breathing discomfort as a result of infestation of mold that was "growing from the ceilings, throughout the whole facility, on the tiers, … in the showers, mold everywhere." The plaintiff's claim in *Bernhart* was analyzed using the deliberate indifference standard enunciated in *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), and the court noted that the mold did not meet either requirement of *Estelle*: the mold, though uncomfortable, did not rise to the level of a constitutional violation, and because the plaintiff had admittedly not suffered from any physical injury or illness, he had not alleged any serious risk of harm in the constitutional sense. The court also noted that "unsanitary conditions may rise to the level of a constitutional violation only if they result in "a serious or significant…injury *resulting from* the challenged conditions.").

[23] *See Department of Commerce v. New York*, 139 S.Ct. 2551, 2565 (2019) ("To have standing, a plaintiff must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling." (internal quotation marks and citations omitted). *See also Wilson v. Caldwell Correctional Center*, 16-1321, 2016 WL 7840735 (W.D. La. 2016) *report adopted by Wilson v. Caldwell Correctional Center*, 2017 WL 244749 (W.D. La. Jan. 18, 2017) (dismissing as frivolous, for lack of standing, an inmate's claim of excessive force being used against other inmates where the plaintiff did not allege that he, himself was a victim of the excessive force). Though Plaintiff requests that this case be a class action, she could not be a class representative because she has not stated a personal conditions of confinement claim. *See* Fed. R. Civ. P. 23. *See also Gillespie v. Crawford*, 858 F.2d 1101, 1103 (5th Cir. 1988) (if an individual is not part of the class, he or she has no standing to seek relief for other persons).

[24] Plaintiff says the inmates at PPDC have lost "the right to free speech (even a sigh of disgust is sufficient for disciplinary action)" (*see* R. Doc. 1, p. 7), but Plaintiff has failed to plead any facts to demonstrate she was prevented from exercising her First Amendment rights. Thus, this conclusory assertion must fail. *See Freeman v. Texas Dept. of Criminal Justice*, 369 F.3d 854, 864 (5th Cir. 2004) (An inmate must do more than point to the existence of a generic First Amendment right – he also must establish that he exercised that right in a manner consistent with his status as a prisoner). Plaintiff also alleges "[t]wo of the four dorms are windowless. It is hard to distinguish day from night or know what the weather is like" (*see* R. Doc. 1, p. 8), but Plaintiff does not allege that she is personally housed in any windowless dorm, nor would the mere fact that windowless dorms exist at PPDC be sufficient to state a constitutional claim. Plaintiff also alleges "they have not gone outside since April 20, 2016," (*see* R. Doc. 1, p. 7), which at the time the Complaint was filed in August 2017 would have been approximately 16 months. Presuming "they" includes Plaintiff, she still fails to state a claim as "prisoners have no absolute constitutional right to outdoor recreation, so long as some form of exercise is permitted, or, the conditions of confinement, when viewed as a whole, are not violative of the Eighth Amendment…. Even severe restrictions on or complete denials of outdoor recreation are not prohibited by the Constitution." *Wingo v. Johnson*, 12-0014, 2012 WL 1390684 at *6 (W.D. La. March 21, 2012) (internal quotation marks and citations omitted). Plaintiff does not allege that there is a lack of space for indoor exercise. To the contrary, it appears there is room for recreation, as Plaintiff alleges that inmates are provided with room for "TV watching, checkers, and jigsaw puzzles." R. Doc. 1, p. 7.

5

harsh, they are part of the penalty that criminal offenders pay for their offenses against society."[25] Simply put, the Constitution does not afford prisoners protection against mere discomfort or inconvenience.[26] Accordingly, the claims related to mold or generally poor conditions at the prisons, whether on behalf of Plaintiff or other inmates, are legally frivolous.

### D. Lost Property

As to Plaintiff's claim regarding her lost property, under well-established federal jurisprudence, an unauthorized negligent or even intentional wrongful deprivation of property by state employees does not amount to a violation of the procedural requirements of due process if a meaningful post-deprivation remedy for the loss is available.[27] The burden is on the complainant to show that available post-deprivation remedies are not adequate.[28] Plaintiff has not alleged that state post-deprivation remedies are unavailable or inadequate. To the contrary, it is recognized that Louisiana law provides ample remedies under which Plaintiff can proceed for recovery of her property or for reimbursement for its loss.[29] Accordingly, Plaintiff's claim relative to an alleged loss of property is also without constitutional merit.[30]

### E. Job Assignment/Loss of Trustee Status

Plaintiff's complaints regarding her assignment to the job of "Laundry Monitor" and loss of trustee status when she was transferred are likewise legally frivolous. An inmate has no

---

[25] *See Rhodes* v. *Chapman*, 452 U.S. 337, 347 (1981).
[26] *See Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir. 1989).
[27] *Hudson v. Palmer,* 468 U.S. 517, 533 (1984); *Parratt v. Taylor,* 451 U.S. 527, 542 (1981).
[28] *Marshall v. Norwood,* 741 F.2d 761, 764 (5th Cir. 1984).
[29] *Id.* at 763.
[30] To the extent Plaintiff also claims former warden of LCIW, James Rogers, "failed to timely evacuate LCIW and protect inmates," and "made every attempt to insure protection of his interests without regard to inmates' safety or property," she does not name Rogers as a defendant, does not state a personal claim for the safety issues allegedly caused by the failure to timely evacuate LCIW in connection with the August 2016 flood and she does not have standing to bring those claims on behalf of other inmates.

constitutional right to a particular job assignment.[31]  Further, even the total loss of trustee status or a prison job does not state a constitutional violation.[32]  Accordingly, Plaintiff's complaints regarding her "mundane job"[33] and loss of trustee status are without merit.

### F. Favoritism

Further, all claims related to favoritism of other inmates and funds being misappropriated are also without merit.[34]  The general complaint regarding favoritism at the prison, while certainly not preferable, does not state a violation of a constitutional right.[35]  Additionally, Plaintiff's claim that prison officials misappropriated funds from the "Snack Shack" does not state any constitutional violation and is conclusory.  Even if this Court assumes the funds derived from the "Snack Shack" were used in a manner not contemplated by prison regulations, this claim fares no better because the failure of prison officials to follow prison rules or regulations does not amount to a violation of a constitutional right.[36]  Further, Plaintiff does not allege she suffered any harm as a result of the alleged favoritism or misappropriation of funds.

### G. Supplemental Jurisdiction

To the extent that Plaintiff's allegations may be interpreted as seeking the exercise of supplemental jurisdiction over potential state law claims, a district court may decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims within the district court's original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or

---

[31] *See, e.g.*, *Cotton v. Hargett*, 68 F.3d 465 (5th Cir. 1995) (a prisoner has no due process right to a particular job assignment).
[32] *See Baxley v. LaBelle*, No. 09-0647, 2009 WL 2970277 at *3 (W.D. La. Sept. 11, 2009).
[33] R. Doc. 1, p. 9.
[34] Though Plaintiff characterizes this claim as "discrimination" (R. Doc. 1, p. 9), Plaintiff does not allege that she is a member of any protected class or that the inmates, whom Plaintiff claims were the beneficiaries of favoritism, were treated better because of their membership in a protected class.
[35] *Cf. Clifton v. Lappin*, No. 10-1243, 2010 WL 4136150 at *4 (W.D. La. Oct. 4, 2010).
[36] *Jackson v. Cain*, 864 F.3d 1235, 1252 (5th Cir. 1989).

7

for other compelling reasons.[37]  If the recommendation is adopted to dismiss all federal claims, it is further recommended that the Court decline the exercise of supplemental jurisdiction over any potential state law claims.

### III. Recommendation

**IT IS RECOMMENDED** that this action be **DISMISSED, WITH PREJUDICE**, as legally frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e) and 1915A.[38]

If the recommendation to dismiss all federal claims is adopted, **IT IS FURTHER RECOMMENDED** that the Court decline to exercise supplemental jurisdiction over any potential state law claims.

Signed in Baton Rouge, Louisiana, on May 1, 2020.

*[signature]*

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[37] 28 U.S.C. § 1367.
[38] Plaintiff is advised that 28 U.S.C. § 1915(g) provides that, "In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section [Proceedings *in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."